AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT
for the
Western District of Washington

___ FILED ___ LODGED
___ RECEIVED

**February 10, 2021**

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY_____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.   MJ21-5034
One iPhone, more fully described in Attachment A )
)
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
One iPhone, more fully described in Attachment A, incorporated herein by reference.

located in the ____Western____ District of ____Washington____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841, 846 | Conspiracy to Distribute/ Possession of Controlled Substances with Intent to Distribute |

The application is based on these facts:
✓ See Affidavit of FBI Task Force Officer Dennis Devlin, continued on the attached sheet.

☑ Delayed notice of 90 days (give exact ending date if more than 30 days: 05/10/2021 is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_____
Applicant's signature

Dennis Devlin, FBI Task Force Officer
Printed name and title

○ The foregoing affidavit was sworn to before me and signed in my presence, or
● The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:  02/08/2021          _____
Judge's signature

City and state:  Tacoma, Washington          David W. Christel, United States Chief Magistrate Judge
Printed name and title

USAO: 2020R00581

# AFFIDAVIT

STATE OF WASHINGTON  )
                     ) ss
COUNTY OF CLARK      )

I, Dennis Devlin, being first duly sworn on oath, depose and state:

## INTRODUCTION AND AGENT BACKGROUND

1. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

2. I am a Detective employed by the Vancouver, Washington Police Department, and have been since March 2004. I am also a Task Force Officer ("TFO") assigned to the Federal Bureau of Investigation (FBI) Safe Streets Task Force and have been so sworn since 2016. As a TFO, I am assigned to the FBI Seattle Division's Vancouver Resident Agency (VRA) in Vancouver, Washington, focusing on the investigation of organized crime, gangs, drug trafficking, and other criminal matters.

3. I have received specialized training from the FBI, attended a 720 basic academy police academy through the Washington State Criminal Justice Training Commission, attended thousands of hours of various law enforcement training provided by the Vancouver Police Department and outsourced specialized training in gangs, drug, firearms and human trafficking. I have conducted over 500 controlled substance investigation cases, conducted well over 100 unlawful possession of firearms cases, written well over 100 search warrants, and served over 200 search warrants during my career, both as a detective and officer with the Vancouver Police Department. I have participated in multiple drug investigations targeting large scale drug trafficking organizations (DTOs) as the case agent or as an investigating agent. During my tenure as a TFO, I have been involved in federal and state wiretap investigations. I have debriefed

defendants and witnesses who had personal knowledge regarding drug trafficking organizations. I have participated in many aspects of drug investigations, including conducting physical surveillance, confidential source management, providing court testimony, preparing search warrant affidavits, executing search warrants, and making arrests.

4. Based upon my training and experience, I am familiar with drug traffickers' methods of operation, including their methods of distribution, storage, and transportation of drugs, their methods of collecting proceeds of drug trafficking, and their methods of laundering money. I am also familiar with methods employed by large-scale DTOs to avoid detection by law enforcement, including the use of cellular telephone technology, text messages, counter surveillance, false or fictitious identities, and encoded communications.

5. The facts in this affidavit are based upon knowledge I gained from my investigation, my personal observations, my training and experience, and information provided by other law enforcement officers, agents, or analysts. I am not providing all information about this investigation, but rather information in a summary fashion that I believe is pertinent to a fair determination of probable cause for the requested search warrant.

**PURPOSE OF AFFIDAVIT**

6. This affidavit is submitted in support of an application to search one cellular phone (the SUBJECT DEVICE) described below and in Attachment A, for evidence, fruits and instrumentalities of violations of Title 21, United States Code, Sections 841 and 846 (drug distribution, possession with intent to distribute, and conspiracy), as described in this Affidavit and in Attachment B:

a) A red iPhone with a black and red case, currently in the Vancouver, Police Department West Precinct, located at 2800 NE Stapleton Road, Vancouver, Washington.

7. As described in this affidavit, law enforcement seized the SUBJECT DEVICE on January 14, 2021 from ANDRES RAMIREZ'S motel room, pursuant to a

lawfully issued search warrant by a Washington County, Oregon judge. Since that time, the SUBJECT DEVICE has remained in the secure custody of law enforcement. As described below, I believe there is evidence on the SUBJECT DEVICE relevant to an ongoing investigation into drug trafficking in the Western District of Washington.

## SUMMARY OF PROBABLE CAUSE

### A.   Background and Search Warrant of Grant Hess Residence

8.   FBI agents based in Vancouver, Washington and the Southwest Washington Interagency Gang Enforcement Team (SWIGET) have been investigating GRANT HESS for the past several months for his involvement in a conspiracy to distribute controlled substances, including methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846.

9.   On January 8, 2021, I authored a District Court search warrant for the residence of Grant Hess, 1725 Southeast 7th Avenue, City of Camas, Clark County, Washington. The search warrant was for evidence of the Washington State crimes of Possession with Intent to Deliver Methamphetamine (RCW 69.50.401 DEL1), Possession of Methamphetamine (RCW 69.50.4013), and Unlawful Possession of a Firearm 2nd degree (RCW 9.41.040.2). The search warrant was authorized by Clark County, Washington District Court Judge K. Parcher on January 8, 2021.

10.   On January 14, 2021, at about 0542 hours, members of the Southwest Regional SWAT team arrived at the Hess residence in marked and armored vehicles and surrounded the residence. Members of the Crisis Negotiation Team (CNT) began loud hailing and giving commands for Hess to exit the residence. After several minutes without a response, Hess, wife Michelle Clark, and two children exited from the front door. Hess was handcuffed and detained without incident.

### B.   Interviews of Grant Hess and Identification of "Mimi"

11.   TFO Sgt. Spencer Harris and I interviewed Hess, who was seated in the backseat of another TFO's patrol vehicle. Hess was escorted to the front seat of Sgt. Harris' police vehicle and his handcuffs were moved to the front. I advised Hess of his

Constitutional rights, which he stated he understood and agreed to talk with the police. I explained to Hess the nature of the search warrant and I asked what officers would likely find inside while searching the residence. Hess stated there was a plastic baggy in the bathroom containing approximately one ounce of methamphetamine. Hess stated he flushed about one pound of methamphetamine and several hundred "blues" down the toilet upon police arrival. Hess described the blues as "oxy 30's" and contain fentanyl. Hess stated there was at least one "blue" in his Mercedes SUV and possibly a small baggy of methamphetamine in the carport.

12. Hess consented to a search of his two vehicles; a Gold Mercedes bearing an Oregon license plate of 189KGL and a black BMW bearing an Oregon license plate of 779HCM. Hess signed a consent to search form for the BMW and Mercedes.

13. During a search of the residence and Hess' vehicles, officers located a baggy of suspected methamphetamine in the driver's seat of the BMW, parked in the carport on the westside of the residence. The suspected methamphetamine field tested positive as such and weighed approximately 29 grams. Officers located two functional digital scales under the hood of the BMW, parked in the carport on the westside of the residence. Both scales contained a white powder residue on the surface of the scales. Officers located two plastic bags containing a white crystal substance consistent with methamphetamine, which were located in Hess' bedroom. Officers located a single blue pill on the front seat of Hess' gold Mercedes with the letter "M" stamped on the pill. Hess' black Samsung cell phone was also recovered from inside the residence and identified by Hess. Officers also located $1,030 in US currency in Hess' wallet, which was seized for intended forfeiture.

14. Hess was transported to the Vancouver Police West Precinct where he was placed in the MCU interview room. Sgt. Harris and I conducted a consensual recorded interview with Hess, where he identified "Mimi" as his current supplier of methamphetamine and the blue "oxy 30" pills containing fentanyl. Hess described Mimi as a Hispanic male, late 20's/early 30's, 5-8", 180 pounds, who speaks good English. Hess stated he first met Mimi at Chantal Trotter's residence in/around October 2020. After

Trotter was "raided" by the police, Mimi reached out to Hess and asked him if he wanted to be "put on" and sell methamphetamine and pills for Mimi. Hess described a few days later Mimi and Hess met at a residence in Vancouver, Washington, where Mimi handed over to Hess two pounds of methamphetamine and 298 blue oxy-30 pills. Mimi fronted Hess the methamphetamine and pills and agreed on a price of $3,000 per pound for the methamphetamine and $7 for each pill.

15. About three days later Hess met with Mimi inside his hotel room in Tigard, Oregon, and paid him $6,500, but still owed him $1,500. Hess did not see any other money or controlled substances inside the hotel room, however, he did see several black duffle bags.

16. On/about January 11, 2021, Hess met with Mimi inside his hotel room at the Motel 6 in Tigard, Oregon. Hess paid Mimi the remainder of his debt, $1,500. Mimi retrieved four pounds of methamphetamine and 1,000 blue oxy-30 pills from a black duffle bag in the room and handed it over to Hess.

C. Identification and Search of Mimi's Motel Room in Tigard, Oregon.

17. Hess told us that on January 13, 2021, Hess drove to the Motel 6 in Tigard, Oregon, and met with Mimi inside his motel room. Hess gave Mimi $4,500 in US currency to apply towards his debt. Hess observed a digital scale on the dresser and several black duffle bags on the floor.

18. Hess consented to a search of his cell phone and described the contact name in his phone "The Dude" (209-685-3536) as Mimi. During a search of Hess' cell phone, I observed a text thread between "The Dude" and Hess. In the thread, Hess asked about his balance, which Mimi relied "4 x 3000 = 12000, and the blues 1000 x 7 = 7000, 19000." Hess also inquired about his room number, which Mimi replied "204."

19. TFO Hall and TFO Price escorted Hess while he directed us and pointed out the Motel 6 where he met with Mimi on January 11 and January 13, 2021. Hess identified the Motel 6 at 11455 Southwest Pacific Highway, Tigard, Oregon, and specifically, room #204.

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

20. Members of the Safe Streets Task Force established surveillance at the Motel 6 and observed a male subject exit room #204. The male stood outside of the room for a brief period and then entered the room again. TFO Campbell took a photograph of the subject and sent it to me by phone. I showed the photograph to Hess, who positively identified the male as the person he knows as Mimi.

21. Hess was provided with his copy of the Notice of Seizure and intended Forfeiture for the $1,030 of US currency located in his wallet. At about 1430 hours Hess was released from the Vancouver Police West Precinct pending further investigation.

22. Det. Joshua Betonte with the Washington County (Oregon) Narcotics Task Force (WCNTF) was consulted. He authored a search warrant for Motel 6, room #204 where Mimi had been observed inside the room.

23. On January 14, 2021, members of the Washington County Narcotics Task Force (WCNTF) executed a Washington County Circuit Court search warrant at the Motel 6 where Mimi was believed to be residing. The search warrant was authorized by the Honorable Washington County Circuit Court Judge Ricardo Menchaca on January 14, 2021, at 1357 hours. During the execution of the search warrant, Andres Ramirez (DOB: X/XX/1990) was found to be the sole occupant of the motel room and was identified by members of the Safe Streets Task Force as the same person investigators had observed entering and exiting the room earlier in the day. Members of WCNTF patted Ramirez down for weapons upon detaining him and removed two large bundles of US currency from his pants pocket, which officers counted and found to total $4,602. Ramirez was escorted downstairs where I took custody of him. I recognized Ramirez from the photograph taken by TFO Campbell earlier in the day, the same photograph shown to Hess and identified by Hess as "Mimi."

24. I sat Ramirez in the backseat of a police vehicle. I read Ramirez his Constitutional rights directly from my department issued notebook which he stated he understood. He agreed to talk to me. SA Thornton witnessed Ramirez being Mirandized.

AFFIDAVIT OF TASK FORCE OFFICER DENNIS DEVLIN - 6

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

25. Ramirez stated, in summary, that he lives in Stockton California and took a Greyhound bus to Portland on Saturday or Sunday (January 9th or 10th). Ramirez has been exclusively staying at the Motel 6. Ramirez stated he was not visiting friends or family and has not left his hotel room. Ramirez stated he does not have a vehicle. Ramirez said he sold his vehicle for $4,500, a Chevy Impala, prior to leaving Stockton and coming to Portland. Ramirez stated he works in the fields in the Stockton area, pruning, but has not been working for the past few months. Ramirez stated the money in his wallet was from selling his Chevy Impala. I confronted Ramirez about his involvement with selling methamphetamine. At this point, Ramirez said he wanted an attorney, and he was not asked any further questions.

26. During a search of Ramirez's wallet, I located a California-issued identification which showed his name was Andres Ramirez. Ramirez stated the address on his identification was not his current address. Ramirez provided his current address in Stockton, California. Ramirez was released from the scene. The $4,602 in US currency was seized from Ramirez.

**D.   The Seizure of the Red iPhone.**

27. During the execution of the search warrant in the motel room, Sgt. Harris located a red iPhone with a black and red case, on the bed, which was also seized pursuant to the Washington County search warrant. I took custody of the currency (seized from Ramirez) and the iPhone found in the motel room. I transported the currency and iPhone to the Vancouver Police West Precinct. The currency was photographed and counted by Sgt. Harris, TFO Price, and me, and totaled $4,602. It was entered into the Vancouver Police evidence system.

28. The cell phone was placed in a temporary evidence locker in the Major Crimes evidence system at the Vancouver Police West Precinct, 2800 NE Stapleton Rd, Vancouver, Washington, pending the application of this search warrant.

## COMMON CHARACTERISTICS OF DRUG TRAFFICKERS

29. Based upon my training, experience, and participation in this and other investigations involving drug trafficking, my conversations with other experienced investigators, and interviews of individuals who have been involved in the trafficking of methamphetamine, heroin, oxycodone, and other drugs, I have learned and know the following.

30. Drug traffickers use mobile electronic devices, including cellular telephones, to conduct their illegal trafficking business. As described below, such equipment often contains evidence of these illegal activities.

31. Traffickers of controlled substances commonly maintain addresses, vehicles, or telephone numbers which reflect names, addresses, vehicles, and/or telephone numbers of their suppliers, customers, and associates in the trafficking organization, and it is common to find drug traffickers keeping records of said associates in cellular telephones and other electronic devices. Traffickers often maintain cellular telephones for ready access to their clientele and to maintain their ongoing narcotics business. Traffickers frequently change their cellular telephone numbers to avoid detection by law enforcement, and it is common for traffickers to use more than one cellular telephone at any one time.

32. Drug traffickers use cellular telephones as a tool or instrumentality in committing their criminal activity. They use them to maintain contact with their suppliers, distributors, and customers. They prefer cellular telephones because, first, they can be purchased without the location and personal information that land lines require. Second, they can be easily carried to permit the user maximum flexibility in meeting associates, avoiding police surveillance, and traveling to obtain or distribute drugs. Third, they can be passed between members of a drug conspiracy to allow substitution when one member leaves the area temporarily. Since cellular phone use became widespread, every drug dealer I have interacted with has used one or more cellular telephones for his or her drug business. I also know that it is common for drug traffickers

to retain in their possession phones that they previously used, but have discontinued actively using, for their drug trafficking business. Based on my training and experience, the data maintained in a cellular telephone used by a drug dealer is evidence of a crime or crimes. This includes the following:

    a.    The assigned number to the cellular telephone (known as the mobile directory number or MDN), and the identifying telephone serial number (Electronic Serial Number (ESN), Mobile Identification Number (MIN), International Mobile Subscriber Identity (IMSI) number, or International Mobile Equipment Identity (IMEI) number). These are important evidence because they reveal the service provider, allow agents to obtain subscriber information, and uniquely identify the telephone. This information can be used to obtain toll records, to identify contacts by the particular telephone with other cellular telephones used by co-conspirators, to identify other telephones used by the same subscriber or purchased as part of a package, and to confirm if the telephone was contacted by a cooperating source.

    b.    The stored list of recent received calls and sent calls. This is important evidence because it identifies telephones recently in contact with the telephone user. This is valuable information in a drug investigation because it will identify telephones used by other members of the organization, such as suppliers, distributors and customers, and it confirms the date and time of contacts. If the user is under surveillance, it identifies what number he called during or around the time of a surveilled drug transaction or meeting. Even if a contact involves a telephone user not part of the conspiracy, the information is helpful (and thus is evidence) because it leads to friends and associates of the user who can identify the user, help locate the user, and provide information about the user. Identifying a defendant's law-abiding friends is often just as useful as identifying his drug-trafficking associates.

    c.    Stored text messages. These are important evidence, similar to stored numbers. Agents can identify both drug associates, and friends of the user who likely have helpful information about the user, his location, and his activities.

     d.    Photographs on a cellular telephone. These are important evidence because they help identify the user, either through his or her own picture, or through pictures of friends, family, and associates that can identify the user. Pictures also identify associates likely to be members of the drug trafficking organization. Some drug traffickers photograph groups of associates, sometimes posing with weapons and showing identifiable gang signs. Also, digital photos often have embedded "geocode" information within them. Geocode information is typically the longitude and latitude where the photo was taken. Showing where the photo was taken can have evidentiary value. This location information is helpful because, for example, it can show where coconspirators meet, where they travel, and where assets might be located.

     e.    Stored address records. These are important evidence because they show the user's close associates and family members, and they contain names and nicknames connected to phone numbers that can be used to identify suspects.

33.    Because drug traffickers in many instances will "front" (i.e., sell on consignment) controlled substances to their clients, or alternatively, will be "fronted" these items from their suppliers, such record keeping is necessary to keep track of amounts paid and owed, and such records will also be maintained close at hand so as to readily ascertain current balances. These records include "pay and owe" records to show balances due for drugs sold in the past (pay) and for payments expected (owe) as to the trafficker's suppliers and distributors, telephone and address listings of clients and suppliers, and records of drug proceeds. These records are commonly kept for an extended period of time. I know that although sometimes these records are kept in paper form, some drug dealers also maintain these records in electronic form on their cellular phone and other electronic devices.

## CONCLUSION

34. Based on the facts set forth in this Affidavit, I believe there is probable cause to believe that, contained within the SUBJECT DEVICE, described in Attachment A, there exists evidence, fruits, and instrumentalities, as described in Attachment B, of violations of 21 U.S.C. §§ 841 and 846 (distribution of, and possession with intent to distribute, controlled substances, and conspiracy to do the same).

35. I am submitting this Affidavit and application electronically in accordance with Local Criminal Rule 41(d)(3).

DENNIS DEVLIN
Task Force Officer
FBI Safe Streets Task Force

The above-named agent provided a sworn statement to the truth of the foregoing affidavit by telephone on the 10th day of Februrary 2021.

DAVID W. CHRISTEL
United States Magistrate Judge

## Attachment A

### Item to be Searched:

One iPhone with a black and red case, currently located in the Major Crimes Office of the Vancouver Police Department West Precinct, 2800 NE Stapleton Road, Vancouver, Washington.

Photographs of the front and back of the phone are below:



AFFIDAVIT OF TASK FORCE OFFICER DENNIS DEVLIN - 12

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

## Attachment B

### Items to be seized

This warrant authorizes the search for the following items in the electronic devices set forth in Attachment A:

Evidence, fruits, and/or instrumentalities of the commission of the following crimes:

Distribution of, and possession with intent to distribute, controlled substances, in violation of 21 U.S.C. § 841(a)(1); conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846.

    a. Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

    b. Stored list of recent received, sent, and missed calls;

    c. Stored contact information;

    d. Stored photographs of narcotics, cash or cash equivalents, firearms or other weapons, or related to the aforementioned crimes of investigation, or photographs that may show the user of the phone and/or co-conspirators, including any embedded GPS data associated with these photographs; and

    e. Stored text messages related to narcotics, cash or cash equivalents, firearms, or other activity related to the aforementioned crimes of investigation, including but not limited to Facebook Messenger, Apple iMessages, Signal, WhatsApp, or other similar messaging services where the data is stored on the telephone.